IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WARREN LEE EDWARDS,
    Plaintiff,

v.                            Case No. 3:08cv561/LAC/EMT

ALBERT YU,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Warren Lee Edwards ("Edwards") proceeds pro se and in forma pauperis in this action brought pursuant to 42 U.S.C. § 1983. Presently before the court is the motion to dismiss or, in the alternative, motion for summary judgment filed by Defendant Albert Yu ("Dr. Yu") (Doc. 45). Edwards filed a response in opposition to the motion for summary judgment (Doc. 47). As set forth below, the court recommends that Dr. Yu's motion for summary judgment be granted.

I.    BACKGROUND

Edwards, an inmate of the Florida Department of Corrections ("DOC"), initiated the action by filing a civil rights complaint on December 22, 2008 (Doc. 1 at 1).[1] The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). In the Third Amended Complaint (Doc. 14), which is the operative pleading in this case, Edwards asserts that Dr. Yu, who was Chief Health Officer ("CHO") at Century Correctional Institution at the time of the events giving rise to this action, was deliberately indifferent to his medical need for x-rays and a splint for his broken finger, in violation of the Eighth

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Amendment (*id.* at 2, 5–9).[2] As relief, Edwards seeks compensatory and punitive damages for "pain, suffering, [and] emotional and mental anguish" (*id.* at 7).

On March 10, 2010, Edwards filed a motion for default and motion for summary judgment (based upon the alleged default) (Docs. 34, 35). He subsequently filed several amended versions of those motions (Docs. 39, 41, 42, 43, 48, 52). Dr. Yu responded in opposition to the motions (Doc. 53), and Edwards filed a reply (Doc. 54). On June 28, 2010, the undersigned recommended that Edwards' motions be denied (Doc. 56).

On April 26, 2010, Dr. Yu filed a motion to dismiss or, in the alternative, motion for summary judgment with an incorporated statement of facts and supporting memorandum, as well as a supporting affidavit (Doc. 45). Dr. Yu contends the evidence shows there is no genuine issue of material fact, and it demonstrates that Edwards cannot show an Eighth Amendment violation (*id.*). The court issued an advisement order informing the parties of the importance and ramifications of summary judgment consideration and provided them with information as to the requirements for materials submitted for Rule 56 review (Doc. 46). Edwards filed a response in opposition to the motion for summary judgment with an incorporated memorandum of law and supporting affidavit (Doc. 47).

II.   MATERIAL FACTS

The following facts are viewed in the light most favorable to Edwards or, except as noted, are undisputed.[3] On January 25, 2006, Edwards' fourth finger of his right hand was injured during

---

[2] The court previously dismissed Edwards' claims against Carolyn Sue Manning (*see* Doc. 20).

[3] As this case comes before the court on Dr. Yu's motion for summary judgment, the court views the facts in the light most favorable to Edwards as the non-moving party, *see* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993), drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. *See* Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997). The court conveys as facts those factual allegations of Edwards' verified Third Amended Complaint (Doc. 14), Yu's affidavit (Doc. 45-1), and Edwards' affidavit and verified response to the motion for summary judgment (Doc. 47), to the extent those facts comply with the requirements for affidavits specified in Rule 56 — that they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see, e.g.*, Dickinson v. Wainwright, 626 F.2d 1184, 1186 (5th Cir. 1980); Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980). Additionally, any facts included in Dr. Yu's statement of facts that are not controverted in Edward's response are deemed admitted. *See* N.D. Fla. Loc. R. 56.1(A) (all material facts set forth in moving party's statement of undisputed material facts will be deemed admitted unless controverted by statement required to be filed and served by opposing party).

an attack by another inmate (Doc. 47 at 2). The same day, Edwards informed a nurse that he injured his finger, and he showed her a cut on the finger (Doc. 14 at 5). The next day, Edwards informed another nurse about the injury and showed her his finger (*id.*). Both nurses responded that his finger would be fine (*id.*). Edwards believed their advice because his finger appeared to be "okay" (*id.*).

More than two months later, on March 30, 2006, Edwards' finger became painful and began to swell and slightly disfigure (Doc. 14 at 5). Edwards placed a makeshift splint around his finger and went to the medical department, where he spoke with a nurse (*id.*). Edwards told the nurse that his finger was painful, beginning to disfigure, and he suspected it was broken (*id.*). The nurse looked at his finger and advised him not to wear the splint because it appeared the joint was merely swollen (*id.* at 5–6). The nurse scheduled an appointment for Edwards to see Dr. Yu, which occurred four (4) days later, on April 3, 2006 (*id.*).

On that date, Edwards informed Dr. Yu that his finger was badly swollen and severely painful, and he suspected it was broken (Doc. 14 at 6). Dr. Yu looked at the finger and slightly touched it (*id.*). His examination showed the fourth finger of the right hand "to be held in flexed position at the first joint of the finger, but was not totally fixed" (Doc. 45-1, Affidavit of Albert Yu ¶ 12). Plaintiff told Dr. Yu that the nurse had advised him to remove the splint, but he was experiencing more pain without the splint (Doc. 14 at 6, 8). Dr. Yu advised Edwards to do self physical therapy by gently moving the joint passively and not using the hand for heavy work; and Yu demonstrated the therapy (Doc. 45-1, Yu Aff. ¶ 12; Doc. 47 at 3). Dr. Yu also advised Edwards that full recovery of his finger to pre-injury status may not occur due to the lapse of time that had occurred (Doc. 45-1, Ex. A, Yu Aff. ¶ 12). Dr. Yu did not provide Edwards with a splint, nor did he order x-rays (Doc. 14 at 6). The next day, Edwards was seen by an Advanced Registered Nurse Practitioner ("ARNP") in the chronic illness clinic (Doc. 45-1, Yu Aff. ¶ 13). The ARNP noted swelling of part of the finger and prescribed an antibiotic and anti-inflammatory (*id.*; Doc. 14 at 6, 8). Edwards did not continue the physical therapy recommended by Dr. Yu because it caused him great pain (Doc. 47 at 3). Dr. Yu did not become aware of Edwards' failure to follow his recommendation until later (Doc. 45-1, Yu Aff. ¶ 12).

On May 23, 2006, Edwards was transferred to the Duval County Jail and did not return to Century Correctional Institution until nine months later, on February 28, 2007 (Doc. 45-1, Yu Aff.

¶ 14; Doc. 47 at 5). On March 2, 2007, Edwards saw an ARNP regarding his fourth finger of his right hand (Doc. 45-1, Yu Aff. ¶ 15; Doc. 14 at 8). An x-ray of his finger was taken, which was "read as negative" (Doc. 45-1, Yu Aff. ¶ 15). An orthopedic/plastic surgeon consultation was initiated but denied by a physician advisor (*id.*).

In April of 2007, Plaintiff complained of pain, swelling, and disfigurement of his finger to "the medical staff," and he requested another x-ray (Doc. 14 at 8; Doc. 45-1, Yu Aff. ¶ 18). The ARNP prescribed an antibiotic for possible infection, but did not order an x-ray (*id.*). On July 12, 2007, Edwards saw an ARNP for complaints regarding urination and his right hand (Doc. 45-1, Yu Aff. ¶ 20). A consultation with a plastic surgeon was again initiated, and he was seen by a plastic surgeon on August 8, 2007 (Doc. 45-1, Yu Aff. ¶ 20; Doc. 14 at 8). Another x-ray was taken (Doc. 14 at 8). The plastic surgeon was unable to offer treatment and recommended a second opinion by an orthopedic specialist (Doc. 45-1, Yu Aff. ¶ 20).

On February 19, 2008, a consultation with an orthopedic specialist was initiated (Doc. 45-1, Yu Aff. ¶ 21). The consultation occurred on March 6, 2008 (*id.*). An MRI was conducted, which noted a deformity with a healed fracture (Doc. 45-1, Yu Aff. ¶ 21; Doc. 47 at 6, Affidavit of Warren Lee Edwards ¶ 2). On April 11, 2008, Edwards was seen by an orthopedic specialist and scheduled for finger surgery (Doc. 45-1, Yu Aff. ¶ 22). On June 12, 2008, Edwards underwent surgery on his finger by Dr. Ong (Doc. 45-1, Yu Aff. ¶ 23; Doc. 14 at 9).

Edwards states that his finger is "grossly disfigured, non-useful, and continuously causing him constant pain" (Doc. 14 at 9; Doc. 47 at 3, 6, Edwards Aff. ¶ 1).

III.  LEGAL STANDARDS

    A.  <u>Summary Judgment Standard</u>

In order to prevail on his motion for summary judgment, Yu must show that Edwards has no evidence to support his case or present affirmative evidence that Edwards will be unable to prove his case at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Yu successfully negates an essential element of Edwards' case, the burden shifts to Edwards to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* Edwards must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Edwards must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e))); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Edwards in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, Edwards still bears the burden of coming forward with sufficient evidence of every element that he must prove. Celotex Corp., 477 U.S. at 317. A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322.

    B.      Eighth Amendment – Deliberate Indifference to Medical Need

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners. Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or

malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively

serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

IV. DISCUSSION

In determining whether evidence may be considered on summary judgment, the court is mindful of the standard regarding the consideration of hearsay statements included in verified pleadings, affidavits, documents, and other materials submitted pursuant to Rule 56. The general rule is that inadmissible hearsay, meaning an out-of-court statement presented for the purpose of establishing the truth of the content of the statement and that does not fall within an exception to the hearsay rule, may not be considered on a motion for summary judgment. Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (citation omitted). The court may consider "'otherwise admissible evidence to be submitted in inadmissible form at the summary judgment state, though at trial it must be submitted in admissible form.'" *Id.* at 1324 (quoting McMillian v. Johnson, 88 F.3d 1573, 1584–85 (11th Cir. 1996)). The "inadmissible form" in which the "otherwise admissible" evidence may be submitted is a kind of evidentiary material listed in Rule 56(c), namely, the pleadings, the discovery and disclosure materials on file, and any affidavits.[4] *See* Celotex, 477 U.S. at 324 (citing Rule 56). Furthermore, an out-of-court statement made to a Rule 56 affiant or deposition deponent must be admissible at trial for some purpose, "[f]or example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes

---

[4] However, the party opposing a summary judgment motion may not rely merely on allegations or denials in its own pleading; rather, its response must "by affidavits or as otherwise provided in [Rule 56,]" set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2).

Case No. 3:08cv561/LAC/EMT

(and not as substantive evidence). Macuba, 193 F.3d 1323–24 (footnotes omitted). Thus, if a hearsay statement is offered for its truth and would not be admissible at trial under an exception to the hearsay rule, it may not be considered on summary judgment. *See id.* at 1325. This is true even though the hearsay statement might be admissible at trial for impeachment, because to be considered on summary judgment, the statement must be admissible as substantive evidence. *Id.* (citing McMillian, 88 F.3d at 1584). Finally, "Rule 56(e)'s personal knowledge requirement prevents statements in affidavits based, in part, 'upon information and belief—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment." Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002). In light of this standard, the undersigned reviewed all of the parties' submissions to determine whether the material conformed to the Rule 56 standard.

Dr. Yu contends there is no evidence that he subjectively knew of and disregarded an excessive risk to Edwards' health or safety, or that he was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he drew that inference (Doc. 45 at 4). Dr. Yu further contends that Edwards' dissatisfaction with the manner or method of Yu's treatment amounts only to a difference of opinion over medical judgments, which is insufficient to give rise to an Eighth Amendment violation (*id.* at 4–5).[5]

---

[5] Dr. Yu does not argue that the injury to Edwards' finger did not present an objectively serious medical need for Eighth Amendment purposes. Although evidence of recent traumatic injury has generally been sufficient to demonstrate a serious medical need, a broken bone does not per se constitute a serious medical need. *Compare* Webb v. Langly, No. 07-13936, 2008 WL 598284, at *1 (11th Cir. Mar. 6, 2008) (affirming district court's conclusions that substantial delay in providing surgery for fractured nose did not pose a serious medical need, and no defendant acted with the requisite deliberate indifference to establish a constitutional violation) (unpublished) *with* Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (defendants did not dispute that broken foot can be a serious and painful injury) *and* Hughes v. Noble, 295 F.2d 495, 496 (5th Cir. 1961) (finding that complaint stated § 1983 claim where plaintiff alleged he was held in jail cell and not provided medical treatment for approximately thirteen hours, "despite his repeated requests for medical attention and severe pain" for injuries ultimately diagnosed "as two dislocated and one fractured cervical vertebrae") *and* Lepper v. Nguyen, No. 09-14453, 2010 WL 675709, at *3 (11th Cir. Feb. 26, 2010) (hand injury which showed discoloration, deformity, mild swelling, numbness, and crepitus ("a peculiar crackling, crinkly, or grating feeling or sound under the skin . . . or in the joints") "certainly qualified" as an objectively serious medical need) (unpublished) *and* Minton v. Spann, No. 5:05cv89/RS/WCS, 2007 WL 1099114, at *16 (N.D. Fla. Apr. 10, 2007) (a broken bone is a serious medical need). The undersigned need not decide whether the injury to Edwards' finger qualified as a serious medical need since, as discussed *infra*, there is insufficient evidence form which a reasonable jury could conclude that the subjective component of the Eighth Amendment standard is satisfied.

Case No. 3:08cv561/LAC/EMT

Viewing the evidence in the light most favorable to Edwards, the evidence does not demonstrate that Dr. Yu subjectively knew that his failure to provide a splint or x-ray posed an excessive risk to Edwards' health or safety, or that he was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he drew that inference. It is undisputed that Dr. Yu became aware of Edwards' injury over nine (9) weeks after it occurred. Although Edwards reported the injury to nurses the day it occurred and the next day (viewing the evidence in the light most favorable to Edwards), he did not voice any further complaints about the finger to medical staff until nine weeks later, on March 30, 2006. When Edwards complained to Dr. Yu of pain and swelling on April 3, 2006, Dr. Yu evaluated the finger, recommended gentle physical therapy, and advised Edwards that full recovery of the finger to pre-injury status may not occur due to the lapse of time. A week later, Edwards received an antibiotic and anti-inflammatory medicine to address the swelling and any possible infection. From that time until May 23, 2006, when Edwards was transferred to the Duval County Jail, Edwards did not seek re-evaluation of the injury or otherwise complain of pain or other problems associated with his finger to medical staff; so Dr. Yu had no way of knowing that additional treatment was necessary. That an ARNP ordered x-rays nearly a year later (after Edwards returned from his eight-month stay in Duval County), or that Edwards felt he should have been given x-rays earlier, demonstrates only a difference of opinion about the proper treatment. *See* Adams, 61 F.3d at 1545 (whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability); *see also* Linares v. Armour Corr. Health Serv., Inc., No. 09-11532, 2010 WL 2667350, at *2 (11th Cir. July 6, 2010) (evidence did not demonstrate a serious medical need for a splint for inmate's broken finger; medical defendants regularly evaluated and treated the finger; a doctor determined—after an examination and review of the x-ray—that the finger was not displaced or dislocated and did not require a splint; inmate did not complain of pain or other problems associated with the finger in the days after entering the institution, so the doctor did not believe that additional treatment was necessary; that a physician's assistant later ordered a splint or that inmate felt that he should have been given a splint earlier demonstrates only a difference of opinion about the proper

treatment).[6] Based upon this evidence, no reasonable jury could conclude that Dr. Yu subjectively knew that his failure to provide a splint or x-ray posed an excessive risk to Edwards' health or safety, or that he was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he drew that inference.

      Furthermore, there is insufficient evidence from which a reasonable jury could conclude that Edwards would not have suffered pain and deformity in his finger if Dr. Yu had ordered an x-ray and provided a splint on April 3, 2006, or that the pain and deformity would have been less severe if Dr. Yu's medical treatment had been different. A delay in providing medical treatment can constitute deliberate indifference. Estelle, 429 U.S. at 104–05. However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Townsend v. Jefferson County, 582 F.3d 1252, 1259 (11th Cir. 2009). In the instant case, Dr. Yu testified in his affidavit that any permanent disfigurement suffered by Edwards was not caused by a delay in treatment attributable to him or ineffective treatment on his part. Edwards has not submitted any medical evidence that the injury to his finger could have been fixed or would have been less severe if Dr. Yu had provided an x-ray and splint on April 3, 2006.[7] Additionally, there is no evidence that an x-ray would have been read as positive for a fracture even if Dr. Yu had ordered one (the first x-ray of Edwards' finger, taken in March of 2007, was read as negative for a fracture). With regard to the splint, Edwards acknowledges that he had crafted a "makeshift" splint for his finger before he saw the nurse on March 30, 2006, and there is no evidence that he was in any way prevented from reapplying it thereafter (the absence of a recommendation from Dr. Yu to reapply the splint could not have prevented Edwards, since he admittedly did not follow Dr. Yu's other recommendation of gentle physical therapy). Therefore, viewing the facts in the light most favorable to Edwards, Dr. Yu has shown that he there is insufficient evidence from which a reasonable jury could conclude that

---

[6] The undersigned cites Linares only as persuasive authority and recognizes that the opinion is not considered binding precedent. See 11th Cir. R. 36-2.

[7] Although Edwards alleges in his complaint that Dr. Ong informed him in June or October of 2008 that had it not been for the delay in diagnosis and treatment of the finger, the finger would not have become disfigured (see Doc. 14 at 9), Dr. Ong's out-of-court statement to Edwards, which Edwards offers for the truth of the statement, is inadmissible hearsay and, therefore, may not be considered on summary judgment.

he was deliberately indifferent to Edwards' medical need, or that his evaluation and treatment had any detrimental effect on Edwards (especially in light of the undisputed evidence of the 9-week delay between the time of the injury and Dr. Yu's evaluation and treatment—a delay which was undisputably not attributable to Yu).

V.    CONCLUSION

Upon consideration of Edwards' Eighth Amendment claim and the evidence submitted, the court recommends that Dr. Yu's motion for summary judgment be granted for the reasons set forth above.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Defendant's motion for summary judgment (Doc. 45) be **GRANTED**.

2. That the clerk be directed to enter final judgment in favor of Defendant and close the file.

At Pensacola, Florida this 15th day of July 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**